So first case of the day, 4-14-0811, Brian Bruce v. McGraw Enterprises, Inc. Attorney Klein is here on behalf of the appellant. Attorneys Walsh and Galanos are here for the athlete. And you've divided your time, it looks to me. Okay. Alright, Mr. Klein, you may proceed. Police, the court, counsel, I'm here on behalf of Brian Bruce to argue for reversal of the summary judgment entered by Judge Kavanaugh here in Sangamon County. I don't think that you need to flink the instruction on what the law is applicable to this case. Standard of review for motions and summary judgments is de novo. In the state of Illinois, there is no liability for natural accumulations of snow and ice. There is liability for unnatural accumulations of snow and ice, and facts may be proved by circumstantial evidence. That is, if you prove certain facts, and you can reasonably infer other facts from the existence of those. It's the application of those rules of law to each case. Each case is fact-specific, and this one is no different. In this case, there's also another law that applies, natural law, and that is that matter exists in three states, solid, liquid, and gas. And in the case of water, water is the liquid, ice is the solid, and the gas is steam or water vapor. Freezes normally at 32 degrees, turns the water vapor to 12. I was going to give you an example of how that can happen. Water can melt without being 32 degrees at the airport in Sangamon County. Look at your roof on a cold winter's day, and the icicles will be dripping. But I have a better example. I was driving on Sunday after a rain shower down Country Road, came over a little hill, and there was steam coming up off the road. Steam crickets created at 212 degrees. Sunday was about 85. That's 127 degrees difference because of the heat of the sun. Why do I get into this? Well, because the circuit court found that there could be no causal connection between a pile of snow and a patch of ice. At least in part, the evidence before it was that the temperature hadn't risen above 32 degrees, so there could be no causal connection. Well, I think that it is reasonable to infer that if you have a patch of ice, which although is still a solid, and you have a pile of snow, and they are next to each other, that the ice melted from the pile of snow, turned to water, moved to the lower elevation, if you will, or lower level, and refroze overnight. This happened at 830 in the morning. That is a reasonable inference which the circuit court refused to make, and I think in that instance was weighing the evidence and trying to decide for it. You're saying the ice could not have been there but for the pile of snow? No, I'm not saying that. Well, isn't that the question? Yes. There are other possibilities as to how the ice got there, but those are also raised questions of fact. There are some crazy possibilities. It could have been something which fell out of an airplane, a chunk that comes out of the bathroom of an airplane and landed there. I don't think that happened. It could be suddenly a spring came up through the asphalt. I don't think that happened.  Well, it could have come, one which is more likely, but there is no evidence of it. It could have come from someone who came out of a McDonald's, decided they didn't like their drink, or a kid just tripped and fell and spilled it. What if it was ice that was there when the snow was removed and never melted? If it was ice that was there when the – let me put it this way. If it was snow that was not removed from the parking lot, then it's a natural accumulation and my client loses. Well, it's not even snow. It's ice from a previous event, and then you move the snow off the parking lot and the ice that was already there remains. There hasn't been any melting. That's a possibility, but there is no evidence that there was ice on the parking lot before this snow, no two days before my client fell, and for the circuit court to conclude that as a matter of law, the ice preexisted and was a natural accumulation is contrary to the law of summary judgment. What evidence do you have to show that it was not a natural? Because you have the burden of proof as a plaintiff. Yes, we do. We do, but we do not have to exclude all possibilities of how that ice got there. Okay, let's say I agree with that. What evidence do you have to show? We'll call this the curve, and there's a pile of snow there. No one disputes that there's a pile of snow there, and I think they might dispute whether or not that's a natural or unnatural accumulation, but at least I think the court will agree that there's evidence that that pile of snow was there. My client said it was there. Mr. Eusing said that he might have put some snow there when he was plowing the lot, and that if he put it there, it was an unnatural accumulation because it was moved from where it naturally fell to a pile someplace else. So that's an unnatural accumulation. And then we have snow, which is white, fluffy flakes, and then we have ice, which forms from either rain, which is freezing, or snow, which is melting and then refreezing. So it has to have some change in character. And here's the pile of snow. Here's the patch of ice where my client fell. The proximity between the snow and the ice is one factor that shows that it came from the unnatural accumulation. The second one is that the testimony is that the rest of the parking lot was clear. This isn't a situation in one of the cases where there was a gravel parking lot and there was some effort to clean it and it had been unsuccessfully cleaned, and so there was some snow left over after the plow. The testimony, and there's no evidence that I know of that controverted, is that that parking lot was clean except for this one patch of ice, which my client didn't see, at the end of the pile of snow. So the proximity, the condition of the parking lot, otherwise... Did somebody testify that the snow was all removed, thus it was clean, or did somebody testify, or was prepared to testify, that they examined the parking lot? My client testified that the parking lot was clear when he drove in. Well, what does that mean? I mean, I guess maybe that's a fact, but the discovery is complete. It is a fact, and what it means is subject to interpretation by a jury, perhaps. What does that mean? But it was clear where he walked. Is it clear where he walked? It was clear where he walked, or he wouldn't have walked on it. I mean, it turned out to be ice, but I... It's a question of fact. You're struggling with a question of fact, which Judge Kavanaugh determined the facts for himself and entered summary judgment. A jury should struggle with these questions. What does Mr. Bruce mean when he says the parking lot was clear? Well, I mean, to me, it means that there's no snow or ice there, that it had been cleared by Mr. Houston, and that there isn't patches and piles left over. He did a good job, except for the fact that he piled what he took off of the parking lot onto a raised surface, then ran back down into the parking lot. As an unnatural accumulation froze, my client tripped and fell on it. Those are the questions of fact that a jury should decide, not a court, on summary judgment. Is there any evidence of the temperature changes which caused the pile to melt and then water to flow and then to refreeze? I believe it was Mr. Walsh, in support of the motion for summary judgment, introduced some evidence of what the temperature was at Capital Airport from the time that the snow fell on the 23rd of January until my client fell on the 25th. And what was that evidence? That evidence is that the temperature at Capital Airport did not go above 32 degrees during that time period. I don't recall what all the temperatures were, but they were. It was below freezing, and in some cases, I believe it was. What evidence are you relying upon, then, that the pile of snow melted and the water flowed from it and then refroze? You have snow and you have ice. The fact that you have ice means that – and there's no evidence that it rained. There's no evidence that someone poured liquid in that spot. There's no evidence that it was – that was left from my previous snow. There is no evidence of anything else other than we have snow and we have ice, and it can – snow can change to ice or can change to liquid and then refreeze. It happens all the time in central Illinois, even if the ambient air temperature doesn't go above 32 degrees. That's the problem that Judge Kavanaugh had, and I see that you are wondering, how could that snow melt if it didn't get above 32 degrees? And my point in starting this out with the natural law, how did that steam come off the road if it was only 85 degrees? It can – the sun can warm it up enough to – a four-foot-tall pile of snow enough to create a two-foot-in-diameter thin patch of water, a puddle of water, which then refreezes. Well, does – does the defendant have to prove that – or disprove that there wasn't – that it snowed three days before, and the ice is left over from that? It did snow three days before. That's the fact. Well, I mean – You mean from before the removal of the larger quantity, or how many times did they plow the lot? In order to get summary judgment, yes, they do have to prove that, because there is a reasonable – So they have to disprove that which you sort of have to prove before – Sure. They have to prove that it's not possible that there is no genuine question of material fact as to the source of that puddle or patch of ice. Puddles or water patches of ice. So your case rests upon the natural inference that ought to be drawn from the pile of snow and the location of the ice. And there's a case – and I apologize, I should have looked up the name of it. And just to follow up on what Justice Connick was just questioning you about, further, defendant must disprove the inference that the pile caused the ice. That's your theory, right? Yes. In order to get summary judgment? Yes. Because I have created a question of fact that it came from the melting pile. I think I've created that question of fact. And in order to get summary judgment, they have to prove that there is no question of fact, which means that they have to prove that the ice came from someplace else. Okay? Now, and I was starting to talk about a case, and it's a case involving the manhole cover, which is a depression in the parking lot. And they had plowed the parking lot, and they had plowed it clear, except that, of course, you can't get your plow down into a two-foot-in-diameter manhole cover. And the evidence was that the plaintiff had stepped onto the ice, which was remaining in that manhole cover. There was evidence of that. And that's where the plaintiff fell. And in that case, the trial court and the appellate court affirmed summary judgment for the defendant. But that's not this case. If there was evidence that said that, let's just say there was a McDonald's employee who said, oh, no, there's always, you know, that's a depression there, and we, you know, they can't plow that, and the snow is always there. Well, I would have a different allegations against McDonald's if the, if the, I would say you have a defect in your parking lot, and you ought to fix the hole. But, you know, that's not the case. There is no defect in this parking lot into which water from a natural accumulation could have run. The most likely source is the unnatural accumulation on the curb, and it runs downhill, water runs downhill, and creates a patch, a puddle of water, which refreezes. If there was any evidence of, and there may be evidence that it came from someplace else, but all that does is create a question of fact. Merely raising the possibility that it, well, first of all, raising the possibility of speculation, but if there was evidence that there had been previous snows and that, you know, this was an accumulation over time, if there was that evidence, that would create a question of fact. But there isn't even that evidence. All there is is we have snow, we have ice, and it never got to 32 degrees, so there's no connection between those two. Therefore, the conclusion is that if there's no connection between the unnatural accumulation and this patch of ice, that there is no, that there's no liability because this one must be, it must be a natural accumulation if you can't show the water running, you know, a video of the water running out of the pile, down the curb, into the puddle, and then watch it refreeze overnight. Is there evidence of slope? From the area where my client fell to the restaurant, yes. The visual, just, yeah, it slopes, the testimony. Yeah, it slopes down to the drive-through is the testimony. You can see it from the pictures that are there. And there's specificity about where your client was walking in relation to the door?  And a pathway from his car to the door? Yes, it is. This is, this, you can look at the pictures, but he parked at the parking space closest to the door. He's there at 8.30 every morning, or was. 8.30 every morning, he parked at the parking space closest to the door, and he's taking the path most directly to the door, walks alongside his car, and at the end of the, this way, he would be walking this way, but the end of the curb is where the patch of ice was. Now, did he measure it? No, he said it was next to the curb. You know, there was some questioning in his deposition. Well, was it an inch away? Was it six inches away? What was it? He said it was next to the curb. He didn't measure it. He'd fallen, and, you know, that wasn't his, in his mind at that time, but the path, the puddle was there, and that's what his testimony is. So, there, like I say, the case law is very fact-specific, and I always go back to one of my early cases I read about products, or premises liability was someone had slipped on a piece of lettuce in a grocery store, and the testimony was, well, was the lettuce green and crisp, or was it wilted and dirty, and, you know, how long had it been there, and should the grocery store have had notice of it? Of course, no one saw the lettuce fall. No one knew how long it had been there, but the natural inferences by proximity and the other condition of the parking lot, I think, do allow a reasonable inference, which creates a question of fact that the puddle was the result of the melting of an unnatural accumulation. It retained its character of an unnatural accumulation when it froze. My client slipped and fell on it, and that was, that is our case, and I know that it's a little difficult, and it's a difficult concept for me to come to grips with, that the defendants have to prove something, okay, because it's a motion for summary judgment. It is my burden to create a question of fact, but what we have are a number of possibilities for the source of that ice, a number of possibilities, and I have created, I believe, a question of fact as to one, and in order to eliminate that as the possibility, they have to prove that there's no question of fact that it was something else, that it was a natural accumulation, and that is just the way these two rules of law match. Thank you very much. Thank you, counsel. Let's see, who's going first? Your Honor, Chris Galanos. All right. Mr. Galanos, you may proceed. May it please the Court, counsel. Counsel. Your Honors, my name is Chris Galanos, and I represent Mike Husing, the snow removal vendor. I'll certainly address some of the issues raised by Mr. Klein's argument, but first I want to reiterate the philosophical underpinnings of the natural accumulation rule, as this Court has stated in Barber v. DJ Partners and a number of other cases, and this is important because it explains why Mr. Klein's argument is incorrect that we have any burden whatsoever. In a natural accumulation case, it's clearly the plaintiff's burden at all times to prove that the condition on which he fell was something other than a natural accumulation. Illinois, as with all Midwestern states, has cold, wet winters with heavy precipitation. But in addition, we've also got large fluctuations in temperature. In a given week, the temperature can go above and below freezing on multiple days and even within the same day. That snow, melting water, and opportunities for that water to freeze can cause hazardous conditions in areas where people walk. It's a known hazard in this part of the country, and due to the widespread nature of these conditions, courts have determined that it's unreasonable to expect business owners, premises owners, to keep those areas clear of naturally accumulating snow and ice. There's no duty to do so. But of course, businesses, patrons, society, the courts, people want to have clear places to walk. They want to encourage businesses to maintain their parking lots in a safe and hazard-free area. But the courts recognize that those kinds of snow removal efforts, although they are to be encouraged, can rarely be done perfectly. And the tension between these two principles results in the rule that unless snow and ice removal efforts are done negligently, and that negligence results in an unnatural condition, a plaintiff can't recover. And so that is the plaintiff's burden. As to a snow removal contractor like my client, his duty is limited to performing his contractual obligations in a non-negligent manner. The record before the court establishes that in this case, my client's obligation was to remove snow from the parking lot in a reasonable manner using a trough with a plow attached to it. Now, there's no evidence he was supposed to remove ice, spread salt, or other chemicals, or to ensure that the parking lot was completely free of snow. He didn't have to go out with hand shovels or other tools. It was a basic plow to get the snow, as much as possible, out of the lot. What the plaintiff testified to is that he fell on a clear patch of ice in an otherwise clear and dry lot. This is apparently a solitary patch of ice, two feet in diameter, that was dry. There's no evidence by the plaintiff at any point that there was evidence of snow melt or that this ice was melting or anything of that nature. So, again, the burden is for the plaintiff to establish that my client caused that single patch of ice to form. He failed to do so, and that's the reason that Judge Kavanaugh entered summary of judgment. As the Second District emphasized in Crane v. Triangle Plaza, a finding of an unnatural or aggravated condition must be based upon an identifiable cause of the ice formation. A plaintiff cannot recover based on conjecture or speculation or a theory. How about an inference? Well, Your Honor, part of what the plaintiff's claim is here is that he can prove his case by circumstantial evidence. And, of course, some facts can be proven by circumstantial evidence. But in the case law that has been put before this Court, it is clear that before you can recover based on circumstantial evidence, it can't be a mere possibility. When there are multiple conclusions that can be drawn from the evidence, the plaintiff has the burden of establishing that his conclusion, his theory, his inference, is more probably true than not the cause of the ice formation. And in this case, they simply can't do it. Is it unusual to push or pile snow in a location close to the entrance? Your Honor, my client denied, of course, pushing the snow up on that lot upon that median. But I think the evidence is such that the Court has to presume that there was snow piled there. But, again, there's no evidence linking, assuming that was improper, there's no evidence linking that improper snow removal effort to this patch of ice. Well, there's testimony that it's three or four foot high. It didn't get there because an employee came out and threw two shovelfuls away from the doorway. That's true, Your Honor. And, again, we don't know how that snow got there. We do know that my client had no responsibility for removing snow from those curves, and neither did McDonald's employees. When snow fell, it landed on that curve. Well, I take it this wasn't a three or four foot snowfall. We don't really have any evidence of it, but I think that's fair to presume, Your Honor. But, again, that doesn't change the fact that the plaintiff has the burden of linking that snow pile to this patch of ice, and there's nothing in the record that does so. There are multiple other possibilities that are more likely than that scenario. For example, as the court pointed out during Mr. Klein's argument, when the snow was removed, snow could have been left over from the prior snow. Ice could have been left there from the prior snow. Or there's evidence that McDonald's employees would spread salt in the area. If there was snow left over from prior snowfalls and salt was placed down, that could result in that water melting and then later refreezing. But as this court has stated in Barber, that would be a natural accumulation. There's nothing improper about those kind of efforts. As Mr. Klein pointed out, somebody could have spilled a drink. Cars coming into the parking lot, customers could have brought in snow on their tires, they parked there, their cars are heated, water drips off their cars, lands in the lot. All of these things could have happened after the time my client plowed the lot. And for a plaintiff to come here and say that it was more probably true than not that this ice piled, when he has not put forward any evidence whatsoever that the weather fell below freezing, I'm sorry, went above freezing in between the time the lot was plowed, he's not put forward any expert testimony to discuss why this single solitary patch of ice would have formed next to this median when apparently, according to the plaintiff, the snow was piled all along this median. What is it about this median that made this single solitary patch of ice form? I think that's something that the plaintiff has the burden of showing through expert testimony. Well, if plaintiff, if the inference is correct that the pile of snow melted, water flows downhill and creates the ice patch upon which plaintiff fell, are you conceding that that would be an unnatural accumulation? Assuming his inference is one that can be reasonably drawn. Not necessarily, Your Honor. I think that, again, in some of these cases where they put forward evidence of piling, snow being a deviation from whatever policies or practices are appropriate with snow removal efforts, they've shown that these were placed in either extremely high elevations that were allowed to flow down or there was improper drainage. Here, there's not really any evidence as to whether or not this was improper. Plaintiff hasn't put forward any expert testimony on that issue. But, again, more importantly, that inference isn't supported by the record. I think that's where the focus should be because, again, it's the plaintiff's burden under all of the case law to establish that that patch of ice is somehow related to that ice patch. And, again, unless he can show that his theory is more probable than any of the other theories, he simply can't recover. And it's unlike or contrary to what Mr. Klein said. It's not our burden to rule it out. It's his burden to prove it or put evidence forward that would support it. And, again, I'd like to talk about the argument that Mr. Klein presented here this morning. And on page 19 of his brief, that water can, that snow can melt when the temperature is below freezing. I'm not contesting necessarily how icicles form on a roof or any of those ideas that Mr. Klein set forth. That's clearly something that has to be proven by expert testimony. If he wants to come in and say that, contrary to science that people understand that ice doesn't melt below 32 degrees, then he needs to put forward evidence showing what the temperature was, how it's possible that it melted when it was below that temperature, something about the elevation of this particular snow pile, something about the snow density, how this concrete or the snow absorbed heat. And, again, there's simply no evidence of that. What we do have is, according to Mr. Klein, evidence that the temperature never went above freezing. And so this is a lot different than some of the cases we've cited, most specifically Crane v. Triangle Plaza and Medeo v. Tri-Land Property. These two cases are almost directly on point with what we have here in Congress. They're simply plaintiff in those cases, unlike here, did put forward weather data that arguably showed that the weather had fluctuated above and below freezing. They had put forward expert testimony, I believe, in Medeo, although not Crane. And even then, the court found that wasn't enough. And in Medeo, much like what Mr. Klein said here today, the court specifically found the fact that water flows downhill is not enough. You've got to prove either the direct testimony, a link between the snow pile and the patch of ice, and that was kind of present in the Hornacek case, but it's not present here. There's nothing linking these two weather conditions. And accordingly, again, without direct or circumstantial evidence connecting these two conditions, Judge Kavanaugh properly entered a summary judgment. And then, unless there are further questions, I have nothing further. All right, I don't see any. Thank you, Mr. Kavanaugh. Mr. Walsh? Thank you, Your Honor. May it please the court, I'm Mike Walsh. I'm here on behalf of McGraw Enterprises, the premises owner of the McDonald's restaurant. Mr. Klein's argument was limited to issues of proximate cause. Mr. Galanis has addressed the issues of proximate cause as it relates to his client. My arguments would be the same, except that as the premises owner, the only duty that my client has is to address unnatural accumulations. And there has been, as discussed here in the briefs and by counsel, the plaintiff's evidence with respect to the unnatural accumulation and the nexus or linkage between that snow pile on the median and the creation of that ice patch is missing. All the plaintiff's evidence is speculative. So when that occurs, and that's what the lower court found, then the default position, if you will, is that the natural accumulation rule applies. And my client, as the owner of the premises, has no duty to remove a natural accumulation. And that's what the state of the evidence is in this case. And so I would ask that the decision of the lower court be affirmed by this court. I don't have any additional argument unless you have some questions that you'd like to ask others. I don't see any. Thank you, Mr. Walsh. Thank you. Mr. Kline, any rebuttal? Yes. First, we heard Mr. Nolanas talk about snow coming off of tires and leftover snow and salt by employees. Now, I will concede that there is some evidence that employees of McDonald's put salt out on the sidewalks outside of the restaurant. I don't think there's any evidence, because I tried to find out what they did or didn't do, but I don't think there's any evidence that they put any salt on the pile of snow which was out by where my client parked. Nor is there any evidence other than speculation that people brought in snow off of their tires and that that snow dropped there and melted and re-froze, or that it was melting off of their tires. And according to Justice Connect, there's no evidence in the record that there were prior snowfalls, that there was anything left over. So, we're talking a little bit about semantics, because I say that, yes, I accept the burden of proof to show that there was an unnatural accumulation, which I think I have done by circumstantial evidence. And the defendants say that, well, it's my burden of proof to eliminate the other causes. And I say, what other causes? What other evidence is put forth that I have to eliminate that that was the cause of my client's, of the patch of ice my client fell on? You know, we can talk about the block of ice falling from the sky or the spring suddenly coming up in the parking lot. Those are examples which I chose because they are so out of the realm of possibility. Yes, it's possible that snow fell off of a car. It's also possible that some young boy decided that it was a really cool thing to do, to slide down a four-foot pile of ice and move that unnatural accumulation onto the parking lot. Okay? But what we have is we have ice, we have snow, we have the natural laws that snow can melt even at the ambient temperature, and that's the key. Who's going to testify to that? That is sixth-grade science. That is within the realm of understanding of the average juror. And if we have to have expert testimony to, and again, that was my purpose in talking about the steam and the icicles. If we have to have expert testimony to establish that ice can melt even when the ambient air temperature, because the sun warms it quicker than the ambient air, then we're going to have to have an expert in every negligence case filed in this state. Will I have an expert if I go to trial? I mean, I would feel silly putting someone on the stand and asking them those questions. I think it would be insulting to a jury. I'm just not sure how you'd argue it with no evidence in the record to support that theory. You know, you wouldn't have anything. How would you get that evidence into the record, I guess is my question, so that you could even argue it? It's an inference that can be drawn from, well, I mean, it's, I guess I would ask the court to take judicial notice. It's the kind of thing that courts can take judicial notice of. It's a natural law. It's a fact. But I don't think I even have to do that, because I have the ice, I have the ice, and I have the snow, and I have the proximity. In the Medeo case that was cited to you by Mr. Galanis, I believe it was, there was a separation between the pile of snow and where the plaintiff fell. It was across the parking lot. And the court said, well, you know, we might find in your favor if you fell closer to the pile, if there was a connection between the pile. Well, I don't have a direct connection where there's a slope, but I do have the patch of ice at the foot of the pile of snow, separated by a four- to six-inch curve, vertical. I think that there is an inference and that the defendant, you think, did not remove the snow from the parking lot in a reasonable manner. He piled it at, according to my client, four foot. Can you show that it's more probably true than not that your inference is correct? Yes. It's a snow pile. Yes. Close the ice. Yes. Okay, how so? I've given you the proximity and... Just on the proximity. Okay. The proximity, the clean lot, and the fact that snow can melt even if it's not, the ambient air temperature is not above 32 degrees. And the reason I think I can show that, and I'll conclude there, is that there is no evidence of any other source for this ice, other than speculation. And there has to be some other to disprove my theory. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess.